UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:14-cv-00171-RLV

| | |
|---|---|
| LAGENIA S. WOOD,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>        Defendant. | ORDER |

**THIS MATTER** is before the court on plaintiff's (#9) and defendant's (#11) opposing Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each Motion for Summary Judgment, the court enters the following findings and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff filed a Title II and Title XVI application for a period of disability, disability insurance benefits, and supplemental security income on July 14, 2011, alleging disability beginning July 12, 2011. (Tr. 19, 186, 190). Plaintiff's applications were initially denied on August 30, 2011, (Tr. 159), and again upon reconsideration on November 3, 2011. (Tr. 167, 171). Administrative Law Judge ("ALJ") Gregory M. Wilson conducted a hearing on April 25, 2013, at which plaintiff, her attorney, and a vocational expert appeared. (Tr. 67). On September 6, 2013, the ALJ denied plaintiff's claim in a written decision. (Tr. 16). Plaintiff requested a review of the hearing decision and on September 16, 2013 (Tr. 13), the request was denied by the Appeals

Council on August 22, 2014, (Tr. 1), making the ALJ's decision the final administrative determination on plaintiff's applications.

## II.     Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was based on substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

      d. If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

      e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

    **C. The Administrative Decision**

At Step One of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 12, 2011. (Tr. 21). At Step Two, the ALJ found that plaintiff had the following severe, medically determinable impairments: degenerative-disc disease of the right knee, obesity, and impairments of the hands. (Tr. 21). At Step Three, the ALJ found that none of plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20. C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 24).

Before proceeding to Step Four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform medium work, with several limitations. (Tr. 25). The plaintiff's RFC limitations included the ability to: lift or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk each for six hours in an eight-hour workday; occasionally climb, kneel, crouch,

or crawl; frequently stoop; occasionally lift overhead; and frequently handle, finger, and feel. (Tr. 25).

The ALJ then found at Step Four that plaintiff could perform her past relevant work as a daycare worker and, in the alternative, at Step Five that jobs existed in significant numbers in the national economy that plaintiff, given her age, education, work experience, and RFC could perform. (Tr. 33). Thus, the ALJ found that plaintiff was not disabled within the meaning of the Act from July 12, 2011, through September 6, 2013. (Tr. 33-34).

**D.     Discussion**

The court has closely read plaintiff's memorandum of law (#10), and plaintiff supplemental memorandum of law (#15), supporting her Motion for Summary Judgment (#).  Plaintiff has made the following assignments of error:

I. The ALJ erred in not finding fibromyalgia to be a medically determinable impairment.
II. The ALJ did not provide good reasons for rejecting the opinion of plaintiff's treating physicians and treating nurse practitioner.
III. The ALJ failed to provide legally sufficient reasons for finding plaintiff's testimony not credible.

(#10) at 5-6. The court will review these allegations of error to determine whether they are based upon substantial evidence.

**1. Fibromyalgia as a medically determinable condition**

Plaintiff asserts that the ALJ erred in not finding fibromyalgia to be a medically determinable impairment. Plaintiff argues that despite Dr. Wodecki using one of two methods outlined in SSR 12-2p, the ALJ did not find plaintiff's alleged fibromyalgia to be medically determinable. Specifically, plaintiff argues that Dr. Wodecky excluded other possible conditions through "extensive diagnostic testing" before diagnosing plaintiff with medical conditions

including fibromyalgia. (#10) at 6.

SSR 12-2p provides that for a claimant to establish that she has a medically determinable impairment of fibromyalgia, she must satisfy each of the three criteria under section IIA or IIB of the ruling. The criteria under section IIA of the ruling are as follows: (1) a history of widespread pain in all quadrants of the body persisting for at least three months; (2) at least 11 of 18 possible tender points are found on physical examination; (3) that there is evidence that other disorders were excluded as possible causes of pain. SSR 12-2p. Section IIB requires three factors to coalesce: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions especially manifestations of fatigue, cognitive or memory problems, walking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. Id.

Inapposite to plaintiff's contention, the ALJ explained that the medical evidence in the record revealed that other medical conditions could account for plaintiff's symptoms. While Dr. Wodecky found symptoms of fatigue, weakness, and the requisite number of tender points, ALJ explained that x-rays of the cervical spine revealed post fusion with early osteophyte of C4, early AC joint degenerative changes on x-ray bilaterally, arthritis of the knees and degenerative changes of the lumbar spine. (Tr. 23). The ALJ noted that plaintiff's pain was consistently attributed to osteoarthritis, cervical and lumbar impairments. (Tr. 23). The ALJ also noted that the objective testing conducted on plaintiff did not rule out other disorders. For instance, the ALJ discussed plaintiff's nerve conduction studies which, while not excluding fibromyalgia, were relatively benign, and demonstrated that plaintiff's symptoms were more consistent with mild left sciatic

neuropathy. (Tr. 28). Additionally, the ALJ discussed an October 5, 2011 MRI which showed minimal disc desiccation without protrusion or stenosis. (Tr. 28). The ALJ also noted an MRI of the right knee, which revealed complete cartilage loss along the medial femoral condyle with underlying osteochondral injury, central fraying of the medial meniscus, edema involving the lateral patellar retinaculum, and evidence of chondromalacia involving the lateral patellar facet. (Tr. 28, 581).

With regards to plaintiff's mental disorders associated with her alleged symptoms of fibromyalgia, the ALJ found that plaintiff's depression does not cause more than minimal limitations in the plaintiff's ability to perform basic mental work activities. (Tr. 23). In reaching this conclusion, the ALJ noted that plaintiff denied being depressed on two occasions. (Tr. 23). The ALJ also discussed that plaintiff's treating physician reported "'no depression, agitation, no mood swings, no other clinically pertinent findings'" with respect to psychiatric conditions. (Tr. 23).

Ultimately, it is the court's task to determine whether the ALJ's opinion was supported by substantial evidence, and it cannot neither re-weigh the evidence nor make the factual determination as to plaintiff's purported mental limitations. Upon review of the ALJ's opinion, the ALJ adequately reviewed the extant record, including the objective medical record, claimant testimony, and other materials, to provide support for the findings that fibromyalgia was not a severe, medically determinable impairment.

### 2. Rejection of treating source opinions

Plaintiff argues that the ALJ rejected the opinions of Dr. Jeffrey Knapp without providing legally sufficient reasons for doing so. (#10) at 10. Specifically, plaintiff contends that the ALJ

does not identify and explain any substantial evidence in the record as a basis for rejecting Dr. Knapp's opinions.

20 C.F.R. § 404.1527 provides that an ALJ will evaluate every medical opinion that he receives. 20 C.F.R. § 404.1527(c), 416.927(c). If a medical opinion is from a treating source, the ALJ will give the opinion controlling weight if he finds that the opinion regarding the nature and severity of the claimant's impairment(s), "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2), 416.927(c). If an ALJ does not give controlling weight to the opinion of a treating source, then the following factors are applied to determine the weight ot give to the medical opinion: (1) the length of the treatment relationship; (2) the nature and extent of the relationship; (3) the opinion's supportability, particularly by medical signs and laboratory findings; (4) the opinion's consistency with the record as a whole; (5) the physician's specialization as it relates to his or her medical opinion; and (6) other factors that tend to support or contract the opinion. 20 C.F.R. § 404.1527(c), 416.927(c).

In her evaluation of Dr. Knapp's opinions, the ALJ discussed Dr. Knapp's letter from August 31, 2011. In that letter. Dr. Knapp opined that plaintiff was to take an indefinite leave of absence from work due to her neck and pack pain, which could have been several months up to a year because plaintiff's fusion needed to heal. (Tr. 31). The ALJ afforded little weight to this opinion, as Dr. Knapp wrote this letter while plaintiff's fusion was still healing. In addition, the ALJ noted that the record does not contain any records from Dr. Knapp after October 5, 2011. (Tr. 31). Instead of visiting Dr. Knapp, plaintiff went on her own to Dr. Alfred Geissele less than a month after Dr. Knapp's letter, where she complained of symptoms in her neck and predominantly

her left periscapular area with radiation down the left upper extremity. (Tr. 31). However, the ALJ noted that plaintiff was not taking anything for pain. (Tr. 31). The ALJ also discussed an October 5, 2011 MRI of the cervical spine which showed minimal disc desiccation at C4-5 and C6-7, and that MRI of the lumbar spine showed no abnormality. (Tr. 31). By August of 2012, plaintiff reported that she was exercising regularly by walking and running. (Tr. 31). The ALJ also noted that musculoskeletal examinations demonstrated good range of motion of the upper extremities with mild discomfort and no abnormality to palpation of the cervical spine. (Tr. 31). Upon evaluation, plaintiff's upper extremity strength was 5/5, sensation was intact, and no atrophy was reported. (Tr. 31). When she received a CAT scan, the ALJ noted that plaintiff's cervical fusion was reported to be solid. (Tr. 31). Accordingly, substantial evidence supports the ALJ's finding that plaintiff improved from the cervical fusion.

### 3. Credibility determination

Plaintiff asserts that the ALJ found plaintiff's testimony not credible without identifying what testimony he found credible and what testimony he did not. (#10) at 17-18. Plaintiff furthermore asserts that the ALJ did not explain why plaintiff's ability to perform sporadic activities throughout the day is the equivalent of perform a different task for 8-hours per day, five days per week at the light level of exertion. (#15) at 3.

Social Security Ruling 96-8p explains that the RFC assessment "'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). "'[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's

ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). A court must not be "left to guess" as to how the ALJ arrived at her conclusions. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

In his determination of plaintiff's credibility, the ALJ compared at length plaintiff's allegations with plaintiff's own reports as well as the objective medical evidence. (Tr. 26). The ALJ noted that although plaintiff testified that her pain is constant, physical examinations revealed that she was in no acute distress. (Tr. 26). The ALJ also noted that plaintiff had no additional surgeries beyond the cervical fusion in 2011. (Tr. 26). Though plaintiff testified that she "does nothing all day," the ALJ noted a treatment report from March 28, 2012 which stated plaintiff was living independently with her husband and daughter. (Tr. 26). While plaintiff testified that she is not able to drive, Plaintiff also reported that she attended church one a week, shopped once a week in stores, and is able to drive a car. (Tr. 26). While plaintiff alleged that she lays down two hours per day, physical examinations also revealed that plaintiff started walking again and ultimately lost 16 pounds. (Tr. 26). Plaintiff also testified that she walked three times per week, exercised regularly, and ran. (Tr. 27, 31). In addressing plaintiff's alleged depression, the ALJ noted that plaintiff denied memory loss, confusion, nervousness, depression and insomnia in March of 2013. (Tr. 27). The ALJ also discussed that plaintiff's treating physician reported "'no depression, agitation, no mood swings, no other clinically pertinent findings'" with respect to psychiatric conditions. (Tr. 23). While plaintiff did request a cane, musculoskeletal examinations were normal overall and gait was reported to be normal. (Tr. 26, 28). While plaintiff complained that she cannot reach out to grab or reach over her head, medical evaluations of plaintiff revealed that she had

good range of motion of the upper extremities with some mild discomfort, mild effusion of the right knee, strength in the extremities was 5/5 with no atrophy, and sensation was intact. (Tr. 26). While plaintiff alleged that she could not perform a repetitive motion of gripping, plaintiff was able to perform a variety of coordination tasks, including rapid alternating movements, upon evaluation. (Tr. 27). The ALJ also noted that treatment records showed normal sensation and no weakness, and that absent from the record was any record of gripping problems or reports of dropping things as plaintiff alleged at the hearing. (Tr. 27, 29). Substantial evidence supports the ALJ's determination of plaintiff's credibility.

The ALJ also discussed at great length how the objective medical record translates into specific work restrictions. (Tr. 27-30). In limiting plaintiff to lifting 20 pounds occasionally and 10 pounds frequently, the ALJ noted that range of motion in plaintiff's upper extremists provided only mild discomfort. (Tr. 27). The ALJ noted that a nerve conduction study revealed mild sciatic neuropathy but did not confirm C8 root irritation. (Tr. 27). The also discussed that magnetic imaging of plaintiff's spine appeared normal, and that range of motion in plaintiff's cervical spine was full without tenderness. (Tr. 27). In limiting plaintiff to occasional overhead reaching and frequent handling, fingering, and feeling, the ALJ noted plaintiff's good range of motion, 5/5 strength, and intact sensation in her upper extremities. (Tr. 28). The ALJ also noted extensive X-ray documentation, nerve conduction studies, diagnostic tests, and physical examinations. (Tr. 29). In limiting plaintiff to occasional kneeling, crouching, crawling, climbing, and frequent stooping, the ALJ discussed plaintiff's history of MRI's and X-ray's at length. (Tr. 28). The ALJ also noted plaintiff's normal gait and range of motion in her hips. (Tr. 28). The court is not "left to guess" how plaintiff's physical limitations translate into specific work restrictions.

## V. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment (#9) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment (#11) is **GRANTED;** and

(4) This action is **DISMISSED**.

Signed: August 25, 2017

Max O. Cogburn Jr
United States District Judge